**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

LISA CREMEANS,                                       Case No. 1:10-cv-862

       Plaintiff,                                    Beckwith, J.
                                                  Bowman, M.J.
    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.


**REPORT AND RECOMMENDATION**

Plaintiff Lisa Cremeans filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for Disability Insurance Benefits ("DIB") on February 25, 2008, alleging disability due to "heart problems, stroke, [and] high blood pressure," with an onset date of January 15, 2008 (Tr. 14, 112, 127). After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing was held in September, 2009, at which Plaintiff was represented by counsel. At the hearing, Administrative Law Judge ("ALJ") Rosanna Drummer heard testimony from Plaintiff, and from Gina Baldwin,

1

an impartial vocational expert. On November 27, 2009, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled.

The record on which the ALJ's decision was based reflects that Plaintiff was born in 1960 and was 47 years old on her alleged onset date. (Tr. 24). She graduated from high school and completed three years of college (Tr. 273), and previously worked as a home health aide, a nurse's aide, and at K-mart (Tr. 128, 271). Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "chronic pain syndrome, a history of trauma, joint arthrosis, myofascial lumbar spine pain, a suspected cerebrovascular attack, and a gait abnormality." (Tr. 16). In addition to Plaintiff's severe impairments, the ALJ noted that Plaintiff had alleged low IQ, problems with her "nerves," and depression, but found no medically determinable mental impairment. (Tr. 17). The ALJ also noted that although Plaintiff is obese, with a weight of 174 pounds and a height of 5' 4" tall, her obesity does not impose more than a slight work-related limitation and is non-severe. (Tr. 17). Finally, the ALJ noted Plaintiff's hypertension and hyperlipidemia, but also found those conditions to be "non-severe." (Tr. 17).

` The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (*Id.*). Rather, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC") to perform a range of light work, with the following limitations:

> She can lift/carry 20 pounds occasionally, 10 pounds frequently; sit for 6 hours of an 8 hour workday; and stand/walk 3 to 4 hours of [an] 8 hour workday. She can never climb ladders, ropes, or scaffolds; and never crawl. The claimant can occasionally climb ramps and stairs; and can

2

> occasionally balance, kneel, and crouch. She can frequently stoop. The claimant must avoid all exposure to the hazards of work involving dangerous moving machinery and unprotected heights; and she cannot drive commercial vehicles....The claimant can understand simple, repetitive type tasks, and can understand, recall, and carry-out simple instructions.

(Tr. 18). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform her past relevant work, she can nonetheless perform jobs that exist in significant numbers in the national economy. (Tr. 24-25). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. (Tr. 26).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by failing to adopt the RFC opinions of her treating chiropractor, by failing to consider the combined impact of Plaintiff's headaches, chest pains, mental limitations, and left-sided weakness, and by finding that Plaintiff's credibility was "poor." Plaintiff argues that the referenced errors caused the ALJ to incorrectly determine Plaintiff's RFC, and that had additional limitations been included, testimony by the vocational expert would have dictated a determination of disability.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for DIB benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1)

3

performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner

4

determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. Specific Errors

#### 1. Failure to Adopt RFC Opinions of Chiropractor

Plaintiff first argues that the ALJ erred by dismissing the opinion of Candace Duty, D.C., a chiropractor, who Plaintiff describes as a "treating source" whose opinions should have been entitled to "controlling weight." (Doc. 10 at 10-11).

Plaintiff's view of the applicable law is mistaken. A chiropractor is not an acceptable medical source under relevant regulations. *See* 20 C.F.R. §§404.1513(a) and (d). Only an "acceptable medical source," generally a physician or psychologist, can be a treating source entitled to "controlling weight." *See* 20 C.F.R. §§404.1527(a)(2); 404.1527(d). On the other hand, SSR 06-03p, 2006 WL 2329939, provides that opinions from medical sources who are not "acceptable" medical sources

5

should still be considered under the factors set forth in 20 C.F.R. §404.1527(d)(2), including "how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)(citations omitted). In this case, the ALJ's rejection of the RFC opinions offered by the chiropractor was not error. The opinions were internally inconsistent as well as inconsistent with other evidence, and contained little explanation or support other than Plaintiff's subjective reports.

Dr. Duty treated Plaintiff for various complaints beginning in June 2008 and continuing through April 2009.[1] (Tr. 294-308, 416-432). At a visit on July 11, 2008, Plaintiff reported that her balance problems had improved, and that her last incident with vertigo had been two weeks prior and lasted only for 20 minutes. (Tr. 300). The following month, in August 2008, Plaintiff reported good health, with no vertigo, respiratory or musculoskelatal pain, anxiety or depression. (Tr. 303). In December 2008, Plaintiff reported lower back pain, balance problems requiring the use of a cane, and head pain on the left side. (Tr. 422-423).

In January 2009, Dr. Duty noted Plaintiff was "slowly improving," (Tr. 421), despite incidents of feeling "wobbly" and needing a cane on uneven ground. (Tr. 295, 421). In February 2009, Plaintiff complained of tenderness and decreased range of motion in her back, memory loss, vertigo and leg weakness (Tr. 418-420). However, at the same time Dr. Duty noted that Plaintiff was doing better on the whole, was able to drive herself to the office, and did not require a cane. (Tr. 20, 418-419, 421). Plaintiff was observed to have improved in walking, despite a report of being tired and having a

---

[1] Dr. Duty previously treated Plaintiff briefly in 2004, but that earlier treatment does not appear to be relevant to Plaintiff's disability claim.

6

sore back and neck. (Tr. 419). In March 2009, Dr. Duty noted continued tenderness in the lumbosacral area and antalgic gait pattern (Tr. 417). In April 2009, Dr. Duty noted that Plaintiff continued to report lower back pain, but was responsive to treatment. (Tr. 416). Dr. Duty advised Plaintiff to return in a month. (*Id.*).

The record does not reflect any return to Dr. Duty for further treatment after April, 2009. However, in August 2009, Dr. Duty completed a residual functional capacity assessment of Plaintiff's abilities, concluding that Plaintiff had significant postural limitations well beyond those assessed by any other medical source or the ALJ. For example, Dr. Duty opined that Plaintiff could stand/walk less than one hour per day, due to her gait abnormality, and that she could not sit for more than four hours per day or one hour at a time, due to her lumbar disc bulge. Plaintiff could never climb or balance, but could occasionally stoop, crouch, kneel and crawl. (Tr. 442). Contradicting herself, Dr. Duty also wrote that although Plaintiff could lift and carry up to 20 pounds occasionally and five pounds frequently, she also could not lift due to a lumbar disc bulge. (Tr. 441, 443). She opined that Plaintiff had some speech difficulties, although she also stated that speaking would not be affected by her impairment. (Tr. 443). Dr. Duty opined that Plaintiff's abilities to reach, handle, push, pull and feel were affected by her impairment, but did not indicate the extent of such limitations. (Tr. 443).

Plaintiff argues that the ALJ erred in failing to adopt Dr. Duty's postural limitations (sitting no more than 4 hours per day with no ability to balance), because Dr. Duty's opinions are not "out of the realm of realistic findings." (Doc. 10 at 11). However, that is not the legal standard for review by this Court.

The ALJ's analysis of Dr. Duty's opinions reflects no error because it is supported by substantial evidence in the record. As the ALJ explained, "[d]espite some waxing and waning of symptoms, [Dr. Duty's] treatment notes consistently noted that the claimant was gradually improving and responsive to therapy." (Tr. 20). The ALJ further reasoned:

> Although the claimant complained to Dr. Duty on several occasions about back pain, shoulder pain, and knee pain, the claimant did not seek any other treatment for these conditions, and the claimant's condition improved with only chiropractic treatment. ...There is no evidence of any x-rays, MRIs, or any other diagnostic imaging analyzing musculoskelatal impairments during the relevant time period. Furthermore, the claimant testified that she does not take any pain medications. When Dr. Apgar examined the claimant he found no significant compromises in her range of motion, no joint abnormalities, and noted that the claimant was able to walk on her heels, toes, and walk heel to toes without difficulty or requiring support....The claimant's physical therapy with her chiropractor consistently noted improvements and responsiveness to therapy.

(Tr. 21). In fact, Dr. Duty's last office note reflects that Plaintiff should return in one month, but no further chiropractic treatment was sought. (Tr. 22). Plaintiff's MRIs and CT scans were essentially normal. (Tr. 21-22, 197-198, 219, 227, 228, 229, 274, 334, 463). Numerous other examination records by other physicians also showed very little pain, full range of motion, and few physical limitations. (Tr. 216-217, 219, 270-282, 382, 390-393).

In contrast to Dr. Duty's report, the ALJ noted the consistency of other RFC reports by consulting physicians, including examining consultants Dr. Apgar and Dr. Sexton. Two non-examining consultants also offered RFC opinions inconsistent with the severe postural limitations suggested by Dr. Duty. (Tr. 22-23).

To further evaluate the record and the opinions of Dr. Duty after the hearing in October 2008, the ALJ provided a copy of the objective evidence of record and

8

submitted a set of interrogatory questions to an impartial medical expert, Hershel Goren, M.D. "The conclusions of an independent medical advisor provide medical support for the ALJ's determinations." *Callahan v. Sec'y of Health & Human Servs.*, 896 F.2d 1369 (Table), 1990 WL 18060, at *2 (6th Cir. March 1, 1990). Dr. Goren, a neurologist, opined that Plaintiff had suffered from "cerebral infarct [brain tissue death] with ataxic gait" which did not meet or medically equal any Listing. (Tr. 466-467). Dr. Goren specifically commented on the RFC form completed by Dr. Duty, finding that her restrictive opinions were "not supported by Dr. Duty's 4/22/09 examination (23F/3), the one [examination] closest to the date" of the RFC form. (Tr. 23, 467). The ALJ granted Plaintiff an additional period of time to respond to Dr. Goren's opinions. However, the ALJ ultimately concluded that

> Dr. Duty's opinion is inconsistent with her own treatment notes, detailing improvements and responsiveness to therapy (Exhibit 23F). The chiropractor's opinions is seemingly based on subjective complaints and the record does not support such extreme limitations. Moreover, chiropractors are not recognized as an "acceptable medical source." The undersigned considers the claimant's chiropractic treatment in evaluating the severity of the claimant's impairments and how the impairments affect the claimant's functioning. See SSR 06-03.

(Tr. 23). The ALJ ultimately gave the opinion of Dr. Goren "some weight," but gave the opinions of Dr. Duty "less weight." (Tr. 24).

The determination of a claimant's RFC, like the determination of disability, is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2). Where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). As discussed above, many other records support the RFC determined by the ALJ, including the residual functional

capacity forms completed by both examining and non-examining consulting agency doctors.

The ALJ's analysis is thoughtful, well-reasoned, and fully supported by both the objective medical evidence, clinical records, and other opinions in the record. Therefore, Plaintiff's claim of error is rejected. As a chiropractor, Dr. Duty's opinions were not entitled to controlling weight under the regulatory framework, and the ALJ applied relevant considerations before rejecting Dr. Duty's most limiting RFC opinions. *See generally Cutlip*, 25 F.3d at 287 (treating physician opinions are "only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence."); *McCoy on Behalf of McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995)(ALJ reasonably discounted treating physician's opinion where claimant's subjective complaints were unsupported by objective findings).

**2. Alleged Failure to Consider Combined Impact of Impairments**

As her second assignment of error, Plaintiff argues that the ALJ failed to properly consider the "combined impact" of her impairments, including her headaches, chest pains, left sided weakness, use of a cane, and mental limitations.[2] However, a review of the record confirms that the ALJ properly considered all of those impairments, both singly and in combination, in assessing Plaintiff's RFC. The ALJ explicitly stated that she was considering "all of the claimant's impairments alone and in combination," (Tr. 17), and her opinion contains evidence of that fact. *See also Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 591-92 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988)(reference to a "combination of impairments" sufficient consideration).

---

[2]Even Dr. Duty's RFC form fails to mention any of these particular impairments.

10

Plaintiff testified to "stabbing" headaches that cause "numbness." (Tr. 45). The ALJ explicitly recounted the evidence and Plaintiff's testimony, including a reference to "long lasting headaches" and numbness. (Tr. 18-19). However, Plaintiff's testimony concerning the intensity of her pain was rejected as not credible. It is unclear how a feeling of "numbness" in the side of Plaintiff's head would translate to work limitations. To the extent that Plaintiff argues that her headaches would impair her "ability to stay on task," the ALJ limited Plaintiff to "simple, repetitive type tasks" and Plaintiff fails to offer any evidence that her headaches were so incapacitating as to require any greater limitations. (*See also* Tr. 21, noting that Plaintiff does not take any pain medications and Tr. 45, Plaintiff's testimony that her headaches are "not long lasting.").

In terms of Plaintiff's alleged chest pains, the medical evidence reflects that Plaintiff's hypertension is stable on medication, and she testified that on the occasions when she experiences more severe chest pains (approximately once per month), her pains are resolved within 2-3 minutes with the use of a nitroglycerine spray. (Tr. 19, 21, 46). A chest x-ray and other objective tests were unremarkable. (Tr. 21).

The ALJ also explicitly considered and acknowledged Plaintiff's left hand grasp weakness and other alleged left side weakness. However, the ALJ noted that the hand weakness did not negatively impair her coordination and manipulation. Taking some weakness into consideration, the ALJ determined that Plaintiff was unable to "climb ladders, ropes, or scaffolds" or to crawl, and determined that she could climb ramps and stairs, and balance, kneel, and crouch, only occasionally. There is no evidence that any left side weakness would impair Plaintiff to any greater extent. (*See* Tr. 22). Although Plaintiff points to testimony that she requires a cane, the ALJ explicitly rejected that

11

testimony as less than credible, noting other evidence (including a reference in Dr. Duty's records) that Plaintiff does not require a cane.[3]  (Tr. 22).

Finally, Plaintiff argues that the ALJ failed to address her mental limitations or memory deficit, or to account for her mild impairment in maintaining attention, concentration and pace, or in tolerating work stress - all of which were noted by examining consulting psychologist, Dr. Sexton.  (Tr. 338-339).  Contrary to Plaintiff's argument, the ALJ very clearly stated that she was including Dr. Sexton's findings in Plaintiff's RFC.  (Tr. 22).  Despite noting a few mild impairments, Dr. Sexton explicitly found that Plaintiff's intelligence was in the low-average range, and that she had no diagnosis or condition relating to any mental disease or disorder.  (Tr. 21, 335-338).  Dr. Apgar also found that Plaintiff's mental status was "essentially normal," and that she had no limitations with understanding and memory, or in maintaining concentration and focus.  (Tr. 282).  Reviewing psychological consultant Dr. Haskins similarly concluded that Plaintiff had no medically determinable mental impairments or limitations.  (Tr. 340).  The ALJ adequately accounted for Plaintiff's very mild mental impairments by limiting Plaintiff to "simple, repetitive type tasks," with the ability to understand only "simple, repetitive type tasks," and to "understand, recall, and carry-out simple instructions."  (Tr. 18).

In sum, Plaintiff fails to explain how any greater limitations would be warranted based upon her alleged headaches, chest pains, left sided weakness, or mental limitations.  No physician or treating source has imposed any greater restrictions for

---

[3]As noted by the ALJ, Dr. Duty noted Plaintiff's report at one visit that she no longer required a cane.  Plaintiff reported to others that she "sometimes" requires a cane, particularly on "uneven ground."  (*See* Tr. 281, 291, 295)

12

these alleged impairments than those determined by the ALJ. Therefore, the record strongly supports the RFC as determined by the ALJ in this case.

### 3. Credibility Analysis

In assessing complaints of pain, an ALJ must review both objective medical evidence and other evidence. 20 C.F.R. §404.1529(c). Plaintiff argues that the ALJ failed to properly evaluate her complaints of disabling pain, and in particular, wrongly assessed Plaintiff's credibility.

There is no question that the ALJ made significant findings based in part upon the "lack of credibility of the claimant's allegations." (Tr. 24). In assessing Plaintiff's credibility, the ALJ focused in great detail on the medical evidence that substantially undercut Plaintiff's asserted level of pain and subjective reports of additional symptoms. Based on the record as a whole, the ALJ determined that: "[T]he claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but . . .the claimant's credibility in statements concerning the intensity, persistence and limiting effects of [her] symptoms [is] poor." (Tr. 21).

In rejecting additional limitations, the ALJ explained that Plaintiff's "allegations are inconsistent with the objective record." For example, although Dr. Melissa Smith restricted claimant from returning to work for a period of approximately two weeks, she never repeated that restriction on subsequent visits after more information concerning Plaintiff's condition was known. (Tr. 21, 198). Contrary to Plaintiff's testimony, there was evidence that Plaintiff "drives and retains a license, and she is no longer prescribed a cane." (Tr. 21, 333). The ALJ pointed out that numerous objective tests, including MRIs and x-rays, were unremarkable. Examining consultant Dr. Agar found only mild

13

symptoms, and noted Plaintiff's abilities to get on and off the examination table, albeit "with difficulty," and to perform heel to toe walks without any difficulty or support. Dr. Apgar also noted that Plaintiff retained intact fine coordination and manipulation despite her diminished left hand grasp. (Tr. 22, 274, 281-282). The ALJ also found it significant that Dr. Apgar deemed Plaintiff's efforts during testing to be "unsatisfactory," with Plaintiff's "poor" effort leading to a conclusion that "the results of testing...viewed as possibly suspect." (Tr. 282, 287). Although Plaintiff repeatedly described having a stroke, Plaintiff's own neurologist was unable to make that definitive diagnosis, and Plaintiff was not in regular treatment with him. (Tr. 22).

Evaluating Plaintiff's credibility at the hearing, the ALJ noted that:

> [T]he claimant's demeanor and testimony at the hearing was totally inconsistent with a disabling presentation. The claimant was upbeat, responsive, personable, and conversational in responses to questions from her representative and from the undersigned. The claimant's activities of daily living do not suggest that the claimant is unable to perform any work. Despite alleging no ability to pay attention or to follow what is said, the claimant testified she watches television and the news and checks her email (Exhibit 9E). Although the claimant stated in July of 2008 that she accompanies her spouse food shopping and he pushes her in a wheelchair with a basket, or she shops by holding on to the buggy so she does not lose her balance, such limitations are not corroborated in any of the objective reports. She also indicated that she prepares food daily and packs her spouse's lunch for work, sews, and does light housework on a computer chair, such as laundry, dusting, vacuuming, sweeping the floor, and loading the dishwasher (Exhibits 8E and 9E).

(Tr. 22).[4]

Plaintiff complains that the medical evidence confirms that Plaintiff had either a cerebral infarct or a cerebral vascular incident in January of 2008; Plaintiff argues that

---

[4] Another inconsistency noted by the ALJ was that although Plaintiff testified that her significant mental limitations caused her difficulty in typing, there was no objective corroboration or reference to such difficulties. (Tr. 22).

the lasting effects from that event should result in a finding of disability.[5] Evidence that Plaintiff suffers from one or more objective conditions expected to cause some pain does not mean that the ALJ must find Plaintiff to be disabled. Many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling). The ALJ took note of the fact that Plaintiff never sought treatment beyond chiropractic care for her back, shoulder, and knee pain (Tr. 21), never sought mental health treatment for her alleged mental impairments (Tr. 22), and did not take pain medication.

The ALJ's analysis of Plaintiff's credibility bears strongly on her formulation of her RFC, in terms of her rejection of additional limitations due to Plaintiff's asserted pain level. A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.

---

[5] Plaintiff also complains of leg pain from two car accidents; however, both of those accidents occurred prior to January 2008 and she continued to work with her leg and back pain after those accidents. (Tr. 46).

15

1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Here, the ALJ formulated Plaintiff's RFC and the hypothetical posed to the vocational expert based upon her findings that many of Plaintiff's subjective complaints were not credible, and that only some of her alleged limitations were supported by the record. Generally, a vocational expert's testimony in response to a hypothetical question accurately portraying the claimant's physical and mental impairments provides substantial evidence in support of the Commissioner's decision that the claimant is not disabled. *See Davis v. Secretary of Health and Human Services,* 915 F.2d 186, 189 (6th Cir. 1987).

Plaintiff points out that the vocational expert testified on cross-examination by counsel that if additional limitations were included, then full-time employment at any level would be precluded. (Tr. 50-51). However, substantial evidence exists in the record to support the functional limitations as found by the ALJ. Therefore, the failure to include additional limitations does not constitute reversible error. *See also Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994)("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.").

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LISA CREMEANS,                                     Case No. 1:10-cv-862

    Plaintiff,                              Beckwith, J.
                                                   Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).